**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| TREVOR JUSTIN WALKER and | ) | CASE NO.  18-10633 |
| MELISSA SUE WALKER, | ) | Chapter 7 |
| | ) | |
| DEBTORS. | ) | |

## CERTIFICATE OF SERVICE

Martin E. Seifert, Trustee, certifies that on the 4th day of October, 2018, a true and correct copy of the attached Amended Notice of Motion and Opportunity to Object was served, via the court's electronic case filing system, or first-class U.S. Mail, postage prepaid, to those creditors and interested parties listed on the attached sheet(s).

Respectfully submitted,

**CHAPTER 7 TRUSTEE**
**444 EAST MAIN STREET**
**FORT WAYNE, INDIANA 46802**
**TELEPHONE: (260) 426-0444**
**FAX: (260) 422-0274**
**EMAIL: mseifert@hallercolvin.com**

**BY:/s/ Martin E. Seifert**
       **MARTIN E. SEIFERT**
       **I.D. #16857-02**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| TREVOR JUSTIN WALKER and | ) | CASE NO.  18-10633 |
| MELISSA SUE WALKER, | ) | Chapter 7 |
| | ) | |
| DEBTORS. | ) | |

**AMENDED NOTICE OF MOTION AND OPPORTUNITY TO OBJECT**

On September 5, 2018, Martin E. Seifert, Trustee, filed his Application to Retain BK Global Real Estate Services and ABC Realty to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 and 330 asking the Court to authorize the Trustee to hire BK Global and ABC Realty as realtors for the sale of real estate owned by the Debtors and to pay an administrative expense upon sale of the real estate pursuant to the Listing Contract.  A copy of the Application is attached.  A copy of the Court's September 6, 2018, Order to serve notice is attached.

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

If you do not want the Court to grant the motion, then on or before **October 25, 2018**, you or your attorney must:

1.       File a written objection to the motion, which should explain the reasons why you object, with the Clerk of the United States Bankruptcy Court at:

        1300 South Harrison Street
        Fort Wayne, Indiana   46802

If you mail your response to the Court, you must mail it early enough so that it will **be received** by the date it is due.

2.       You must also mail a copy of your objection to:

        Martin E. Seifert, Trustee
        444 East Main Street
        Fort Wayne, Indiana 46802

        U.S. Trustee
        555 One Michiana Square
        100 East Wayne Street
        South Bend, Indiana 46601

Steven J. Glaser, Esq.
Glaser & Ebbs
132 East Berry Street
Fort Wayne, Indiana 46802

If you do not file an objection by the date it is due, the Court may grant the relief requested without holding a hearing. If you do file an objection, the Court will set the motion for hearing, which you or your attorney will be expected to attend.

**DATED**: October 4, 2018

**Respectfully submitted,**

**CHAPTER 7 TRUSTEE**
**444 EAST MAIN STREET**
**FORT WAYNE, INDIANA 46802**
**TELEPHONE: (260) 426-0444**
**FAX: (260) 422-0274**
**EMAIL: mseifert@hallercolvin.com**

**BY:/s/ Martin E. Seifert** _____
      **MARTIN E. SEIFERT**
      **I.D. #16857-02**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 18-10633 |
| | ) | Chapter 7 |
| TREVOR JUSTIN WALKER and | ) | |
| MELISSA SUE WALKER, | ) | |
| | ) | |
| Debtors. | ) | |

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND ABC REALTY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§ 327, 328 AND 330

**Martin E. Seifert**, as Chapter 7 Trustee (the "Trustee") for the above referenced Debtors (the "Debtors"), by and through the undersigned counsel, files this Application for entry of an order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Declaration of Realtor at *Exhibit A* (the "BKRES Declaration") and (2) ABC Realty  ("Listing Agent") under the terms of the agreement (the "Listing Agreement") at *Exhibit B*.  In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and local licensed Listing Agent (individually and collectively referred to as "Broker or Brokers"), at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay an 11 U.S.C. § 506 surcharge to provide a carve out for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

1

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as an 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carve out for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold.

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3.      On April 15, 2018, the Debtors commenced this case by filing a voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, the Trustee was appointed as the Chapter 7 Trustee in this case.

5.      The Trustee held and concluded the 341 meeting on May 21, 2018.

6.      The Debtors are the sole owners of real property located at **773 N 100 W, Dunkirk, IN 47336** (the "Property").

7.      The Debtors have no equity in the Property.  The Debtors' schedules reflect that the Property is currently worth $90,000.00 but is subject to a first mortgage lien (the "Senior Mortgage") in favor of PENNY MAC (the "Secured Creditor") in an amount exceeding $81,456.00.

8.      The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtors' estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES and Listing Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers:

> a. sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

b.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

c.  agree to a 11 U.S.C. § 506 surcharge to pay all of the customary expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a meaningful carve out for the benefit of allowed unsecured creditors of the Debtors' estate.

9.      Trustee expects BKRES and Listing Agent to obtain Secured Creditor's full, final and unconditional Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

10.     By this Application, the Trustee requests authority, pursuant to §§ 327, 328(a) and 330 of the Bankruptcy Code, to (a) retain BKRES and Listing Agent to **provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to** procure Secured Creditor's Consent, (b) engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject estate Property to facilitate the sale of the Property for the benefit of the Secured Creditor(s) and bankruptcy estate, (c) reimburse Brokers in the maximum amount not to exceed $500.00 for any approved, out-of-pocket costs incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order, and (d) approve Secured Creditor's payment of the fees described herein and below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

### APPLICATION

11.      Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor or trustee "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).

12.      As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity. [An expedited sale of the estate Property securing an allowed secured claim in this case pursuant to Section 363 of the Bankruptcy Code will enhance the bankruptcy relief sought by the Debtors, provide a recovery of value for the bankruptcy estate that will result in a meaningful distribution to unsecured creditors, and provide direct equitable benefits to the Secured Creditor in the following ways:

a.      in exchange for an expedited free and clear sale and realization of the current fair market value of the Property by the Secured Creditor, the Debtors' estate will be released from the Senior Mortgage and any deficiency claims resulting from the sale;

b.      an expedited free and clear sale of the Property will provide a loss mitigation option that enables the Secured Creditor and Debtors to avoid the substantial expense of foreclosure proceedings and the damaging impact of foreclosure on the financial recovery of the bankrupt Debtors and their ability to obtain future credit;

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

c.      an expedited free and clear sale of the Property will provide a negotiated cash payment as a meaningful recovery of value for the bankruptcy estate and the unsecured creditors;

d.      an expedited free and clear sale of the Property will eliminate the need for a foreclosure sale and enable the Secured Creditor to limit its expenses to legal costs, property preservation costs, insurance, and taxes; and,

e.      the Debtors' voluntary surrender of the Property to the administration of the Trustee and the Secured Creditor's  consent to the sale of the Property will enable the Trustee to use the forces of a free market to establish the true fair market value of the Property for the benefit of all interested and affected parties.]

13.      The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtors' estate, but can only be achieved if Secured Creditor's Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtors' estate.

14.      In no event will the estate have any obligation to pay BKRES or Listing Agent for their services, or to pay for customary title and closing services.  The terms of the BKRES Agreement and Listing Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission and obtain reimbursement of any out-of-pocket expenses and payment for all other expenses associated with the sale of the Property from the sale proceeds at closing in accordance with the order approving the sale.

15.      BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16.     The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17.     BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as *Exhibit A* is the Declaration of Disinterestedness of BKRES.  BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent, or a buyer's Agent, if applicable.

18.     Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES, or a buyer's Agent, if applicable.

CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this Application pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated:  September 5, 2018                    **Respectfully submitted,**

                                            **CHAPTER 7 TRUSTEE**
                                            **444 EAST MAIN STREET**
                                            **FORT WAYNE, INDIANA 46802**
                                            **TELEPHONE: (260) 426-0444**
                                            **EMAIL: mseifert@hallercolvin.com**

                                            **BY: /s/ Martin E. Seifert**
                                                **MARTIN E. SEIFERT**
                                                **I.D. #16857-02**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the above and foregoing Trustee's Application to Retain BK Global Real Estate Services and ABC Realty to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 and 330 has been sent by first class, United States mail, postage prepaid, or electronically by the Court's electronic filing system, this 5th day of September, 2018 to:

        Steven J. Glaser, Esq.
        glaser.bankruptcy@frontier.com

        U.S. Trustee
        USTPRegion10.SO.ECF@usdoj.gov

                      /s/ Martin E. Seifert
                      **MARTIN E. SEIFERT**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| | : | Case No. 18-10633 |
| | : | |
| | : | |
| Debtor | : | |
| Trevor Walker | : | |
| Melissa Walker | : | |

### DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND ABC REALTY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14)

1

**Exhibit A**

of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

       3.    A description of the qualifications of, and services provided by, BKRES is attached as <u>Schedule 1</u>.

       4.    That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

       5.    That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as <u>Schedule 2</u> hereto, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this _30_ day of July, 2018.

 

                                             Patrick Butler
                                           Broker-in-Charge

The foregoing instrument was sworn to and subscribed before me this _30th_ day of July, 2018, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

                              NOTARY PUBLIC

                              Notary Public, State of Florida

                              My Commission Expires



Notary Public State of Florida
Lyda Castro
My Commission FF 905572
Expires 08/03/2019

**SCHEDULE 1**

**STATEMENT OF QUALIFICATIONS AND SERVICES OF BKRES**

BK Global™

BK Global™ is a national company with a bankruptcy service platform containing a network of certified BK real estate Brokers and Agents, a national marketplace for listing and submitting bankruptcy real estate purchase offers (www.bkglistings.com), and a centralized team of loan servicing specialist that enable Federal Trustees to streamline and manage their real estate needs most effectively for the benefit of the bankruptcy estate and unsecured creditors. By integrating its unique services and implementing its proprietary tools, BK Global is poised to create industry standards and efficiencies.

Consented Sale™

A Consented Sale™ is an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage. A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

BK Score™

BK Score™ is generated from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms and indicates the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BK Global provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global™ is at the forefront of creating new industry standards for trustee services.

To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates a number of unique methodology questions that include the data points listed below.

3

**Highlighted BK Score™ Data Points**

- Asset Value / Liabilities / Liens
- Judicial / Non-judicial State Analysis
- Pro Se (Professional Legal Representation)
- Title Search
- Statement of Intent by Debtor
- Foreclosure Timeline Analysis
- Redemption Period Analysis
- Community / Non-community Asset
- Asset Valuation Model (AVM)

## BK Score™ Core Benefits

**Increased Confidence of a Consented Short Sale** – BK Score™ gives lenders, servicers and real estate professionals more precise information on which to determine baseline sales values to achieve a successful consented short sale.

**Accelerates the Short Sale Decision Process** – Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

**Reduces Risk of Completing a Cooperative Short Sale** – There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

**Increases Transaction Transparency** – BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance. With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence.

The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

4

## SCHEDULE 2

**AGREEMENT BETWEEN BKRES AND THE CHAPTER 7 TRUSTEE**

[Attached]



July 27, 2018

Martin Seifert
Chapter 7 Trustee
444 East Main St
Fort Wayne, IN 46802
E-mail: mseifert@hallercolvin.com

Re:    Trevor Walker & Melissa Walker
       Agreement to Negotiate Real Estate Sale for 773 N 1100 W, Dunkirk, IN 47336

Dear Trustee Seifert:

This letter confirms the Agreement to Negotiate a Real Estate Sale for the referenced property ("Property") and confirms the undersigned's ("our," "we" or "us") agreement to negotiate a Real Estate Sale on the following terms and conditions (collectively, the "Agreement") with the provision that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

　　　　1.　　　Following your signature approving this Agreement, we and our affiliate, Bankruptcy Global Holdings, LLC, D/B/A Bk Global will make commercially reasonable efforts to procure the consent and agreement ("Consent") of the senior mortgagee ("Secured Creditor") to:

　　　　　　　a.　　　sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court or agree to 11 U.S.C. § 363(k) and place a credit bid on the Property from the estate;

　　　　　　　b.　　　release its lien with respect to the Property; and

　　　　　　　c.　　　agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

　　　　2.　　　We will select a local real estate broker to co-list the property. You will retain both BK Global and the local real estate broker to market the Property for sale to the public under a separate listing agreement. We will assist them by coordinating all aspects of the listing and sale process that involve Secured Creditor's Consent. We will also prepare and deliver any and all reports and information about the Consent, listing and sale process that you reasonably require. However, the local listing broker will be solely responsible for providing you with all other brokerage services associated with selling the Property, including inspecting it to confirm condition and occupancy, preparing any comparative market analysis and/or Broker's Price Opinion (BPO), recommending a listing price, preparing marketing materials, including photographs and sign-age, and displaying the same at the Property and on the Multiple Listing Service, conducting all open houses and showings, and helping you evaluate and negotiate purchase offers, all at their sole cost and expense.

1

**Martin Seifert, Trustee**
**Agreement to Negotiate Consented Sale**
**773 N 1100 W, Dunkirk, IN 47336**
**Trevor Walker & Melissa Walker**

3.      The term of this Agreement will commence when you sign and return a copy of this letter and the court approves it.  This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the Chapter 7 Trustee files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

4.      There will be no fees due to, or payable by, either party under this Agreement, and neither party will be reimbursed by the other party for any cost or expense.  Subject to the foregoing, you acknowledge and agree that our fee and expenses will be paid by Secured Creditor as a 11 U.S.C. § 506 surcharge, if and to the extent that Secured Creditor agrees, and the court approves.  You further acknowledge and agree that, if the Property is sold to a third party, we may receive some or all of our fee and expenses under a fee agreement with the local listing broker.

5.      You will make commercially reasonable efforts to assist us in procuring Secured Creditor's Consent and marketing and selling the Property and hereby appoint us as your agent to act on your behalf as trustee in connection with the same.

6.      We acknowledge and agree that (a) you are not executing this Agreement in your individual capacity, but solely as trustee of the estate, (b) we do not and will not have any right or claim with respect to the estate and (c) our sole recourse for payment of our fee and expenses will be to Secured Creditor under the Consent and the local listing broker under our fee agreement, but only if and to the extent that the same are approved by the court.

7.      This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same.  It may not be modified or amended except in a writing signed by both parties.

Please let us know if you have any questions regarding the foregoing or enclosed materials. Otherwise, kindly confirm your agreement by signing and returning this letter to retain us at your earliest convenience.

We look forward to working with you.

Sincerely,

**BK GLOBAL:**

**BK GLOBAL REAL ESTATE SERVICES**, a Florida limited liability company

By:_____

        Patrick Butler, Broker-in-Charge

Acknowledged and agreed as of the date set forth above.

**TRUSTEE:**

_____

**MARTIN SEIFERT**, not individually but solely as Trustee in the referenced matter.

2



INDIANA
ASSOCIATION OF
REALTORS®, INC.

# Listing Contract
# (EXCLUSIVE RIGHT TO SELL)

1 Date: _____
2
3 In consideration of services to be performed by _____
4 (Broker/Company, hereinafter referred to as "Broker") for _____ *Walker*
5 _____*Martin Seifert, BKY Trustee for the estate of Trevor & Melissa*_____ ("Seller")
6 Seller appoints Broker as Seller's broker with irrevocable and exclusive right to sell, exchange, option, or lease the real property known as
7 _____ in _____ Township ,
8 _____ County, _____, Indiana _____
9 (zip code) legally described as: _____
10 _____*773 N 1100 W, Dunkirk, IN 47336*_____ (the "Property")
11
12 This contract begins on _____, and expires at 11:59 P.M. _____
13 subject to the following terms and conditions:
14
15 List Price: $ _____    Possession: _____
16 **Seller represents that Seller ☐ is ☐ is not delinquent on any loans which could constitute a lien on the Property and the total**
17 **loans affecting the Property do not exceed the list price and costs of sale. Seller is not a party to any bankruptcy proceeding.**
18 **Also, Seller has the capacity to convey the Property by a general Warranty Deed or by _____. Did the Seller acquire**
19 ownership of the property at a tax sale, Sherriff's sale, any judicial sale, or mortgage foreclosure proceeding? ☐ Yes ☐ No. Seller ☐ is ☐ is
20 not a "foreign person" (individual or entity). Seller ☐ is ☐ is not subject to the Foreign Investment in Real Property Tax Act. See
21 http://www.irs.gov/publications/p515/index.html.
22
23 Terms of Sale: The Property may be sold for cash or any of the following methods indicated below:
24 ☒ Conventional Mortgage            ☐ Conditional Sales Contract
25 ☐ Insured Conventional Mortgage    ☐ FHA
26 ☐ Assumption of Existing Mortgage Balance   ☐ VA
27 ☒ Other *Cash*
28 Seller agrees to pay costs associated with financing not to exceed _____
29 Property Offered for Sale: The above list price includes the Property and all improvements and fixtures permanently installed and affixed
30 thereto, except _____ Items of Personal Property
31 included in the sale: _____
32 _____
33 _____
34
35 A.  **EXCLUSIVE LISTING.** The parties understand and agree that this is an exclusive right to sell, option, exchange or lease
36     listing, and Broker shall be entitled to the commission hereinafter established which shall be payable upon the occurrence of any of
37     the following events:
38
39     1.  at the time the Property is sold, optioned, exchanged or leased by any person, including the Seller, to any person
40         during the term of this contract or any renewal or extension thereof,
41     2.  at the time Seller, Broker, or any other real estate licensee secures a buyer or lessee ready, willing and able to
42         purchase, option, exchange or lease the Property for such price and terms as specified, or such other price or terms
43         as Seller may accept,
44     3.  at the time an agreement is entered into sell, exchange, option or lease during the term of this contract or any
45         renewal or extension thereof, and ultimately completed after the termination of this contract,
46     4.  the Property is sold, optioned, leased, or exchanged by Seller or any person within _____ days
47         after termination of this Listing Contract to any person procured in whole or in part by the efforts of Broker, any cooperating
48         broker, or Seller, provided, however, this extension clause shall not apply if this Exclusive Listing Contract terminates and
49         the Property is listed exclusively with another licensed broker, or
50     5.  at the time of default by Seller to any valid, fully executed, written agreement to sell, option, exchange, or lease the Property.
51
52 Any commission required to be paid under items 1., 3. and 4. above shall be due and payable at the closing of the transaction
53 when title to or any interest in the Property is transferred to a buyer or lessee. Any commission required to be paid under items 2. and 5.
54 above shall be due and payable upon demand by Broker. In the event that commission is not paid when due, then Broker shall be entitled
55 to interest rate of _____ % per annum until commission is paid.
56
57 If the Seller and a Buyer sign a Purchase Agreement, Option to Purchase Real Estate, Lease or the closing of the sale of the Property will not take
58 place until after the term of this contract, then this contract shall automatically be extended to coincide with the closing date or term of the lease.
59
60 B.  **BROKER'S COMMISSION.** The broker's commission charged by the listing Broker for services rendered, with respect to any
61     listing is solely a matter of negotiation between Broker and Seller and is not fixed, controlled, suggested recommended or maintained
62     by the Indiana Association of REALTORS®, Inc., the local Board/Association of REALTORS®, the listing service (if applicable) or any
63     person not a party to the contract.

(Property Address)
**Page 1 of 5 (Listing Contract)**
Copyright IAR 2017

Exhibit B

64  Seller shall pay in cash to Broker for services a total commission as follows:
65
66      1.  _____ % of the selling/exchange price or option selling price, but not less than $ _____
67
68      2.  In the event of a purchase option, the Seller agrees to compensate Broker _____ % of the
69          consideration paid for an Option to Purchase.
70      3.  In the event of a lease, the Seller agrees to compensate Broker _____ % of all
71          amounts to be paid by a lessee to Seller over the term of the lease.
72      4.  Other: _____
73          _____ .
74

75  **SELLER HAS BEEN ADVISED OF BROKER'S COOPERATIVE COMPENSATION POLICY, including the amount of compensation that**
76  **will be offered to cooperating brokers which is _____ % of the selling price but not less than $ _____ .**
77

78  C.  **COMMISSION; ATTORNEY FEES.** For purposes of this contract, the parties understand and agree that Broker's commission is deemed to
79      be a share of the purchase money received by Seller. If any action is filed in relation to this Listing Contract, the unsuccessful party shall
80      pay to the successful party a reasonable sum for the successful party's attorney's fees and court costs.
81

82  D.  **EARNEST MONEY.** Broker is authorized to accept earnest money or any part of the purchase price and hold it in an escrow/trust
83      account. In the event that Seller is to receive any portion of the earnest money, Seller authorizes Broker to keep any earnest money deposits
84      up to the amount the commission would have been if the sale was completed in payment for Broker's expenses, services and advertising.
85

86  E.  **LISTING SERIVCE INFORMATION ( IF APPLICABLE).** It is understood that the Broker may rely on the validity of the data pertaining to
87      this Listing Contract which has been provided by the Seller, and the Seller agrees that Broker may disclose the data to a listing service,
88      Internet or any advertising media and that the Broker may furnish notice to a listing service or other provider of all changes of information
89      concerning the Property. Seller has been advised of the benefits of marketing a property through a listing service. Excluding a property
90      from a listing service may result in a lower number of offers received and lower sales price.
91

92  F.  **INFORMATION REGRDING PROPERTY. Seller acknowledges that the information on the Seller's Residential Real Estate** Sales
93      Disclosure Form (if applicable) and the information provided for the listing is true and correct, and that Seller is the owner of the Property
94      or is the authorized agent(s) of the true owner with complete and full authority to act on behalf of the owner(s). Seller further warrants that
95      no other listing contract is now in force with any other broker. The Seller(s) or authorized agent(s) agree to indemnify, actively defend and
96      hold Broker, Company and its agents harmless from any damages, loss, liability and expenses including attorney fees and costs, arising
97      from incorrect information or failure to supply material information regarding the Property, including, but not limited to: the condition of
98      appliances, heating, plumbing, electrical, sewage, major defects in structure, mold and/or other environmental conditions or hazards,
99      location of property lines, public and private restrictions on the use of the Property, any loss or liability in conjunction with this agreement
100     or with Broker or other licensees showing the Property including, but not limited to, injuries suffered by other licensees or prospective
101     buyers.
102

103  G.  **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE.** Seller acknowledges that Listing Broker, Selling Broker and all licensees
104     associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or
105     existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist
106     and affect the Property. Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not
107     limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young children and/or the elderly.
108

109     **Seller agrees to consult with appropriate experts and accepts all risks for Environmental Contaminants and releases and holds**
110     **harmless all Brokers, their companies and licensees from any and all liability, including attorney's fees and costs, arising out**
111     **of related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including**
112     **Environmental Contaminants. This release shall survive the closing.**
113

114  H.  **AGENCY DISCLOSEURES.**
115
116     1.  **Office Policy.** Seller acknowledges receipt of a copy of the written office policy relating to agency.
117
118     2.  **Agency Relationship.** I.C. 25-34. 1-10-9.5 provides that a Licensee has an agency relationship with, and is representing, the
119         individual with whom the Licensee is working unless (1) there is a written agreement to the contrary; or (2) the Licensee is merely
120         assisting the individual as a customer without compensation. Licensee(Broker) represents the interests of the Seller as Seller's
121         agent to sell the Property. Licensee owes duties of trust, loyalty, confidentiality, accounting and disclosure to the Seller. However,
122         Licensee must deal honestly with a buyer and disclose to the buyer information about the Property. All representations made by
123         Licensee about the Property are made as the agent of the Seller. Seller is advised that the Property may be sold with the assistance
124         of other Licensees working as buyer agents and that Licensee's company policy is to cooperate with and compensate

---

buyer agents. Buyer agents are Licensees who show the Property to prospective buyers, but who represent only the interests of the buyer. Buyer agents owe duties of trust, loyalty, confidentiality, accounting and disclosure to buyers. All representations made by buyer agents about the Property are not made as the agent of the Seller.

3. **Limited Agency Authorization.** Licensee or the managing broker may represent Buyer as a buyer agent if such a Buyer wishes to see the Property, Licensee has agency duties to both Seller and Buyer, and those duties may be different or even adverse. Seller knowingly consents to Licensee acting as a limited agent for such showings.

If limited agency arises, Licensee **shall not disclose** the following without the informed consent, in writing, of both Seller and Buyer:
   a. Any material or confidential information, except adverse material facts or risks actually known by Licensee concerning the physical condition of the Property and facts required by statute, rule, or regulation to be disclosed and that could not be discovered by a reasonable and timely inspection of the Property by the parties.
   b. That a Buyer will pay more than the offered purchase price for the Property.
   c. That Seller will accept less than the listed price for the Property.
   d. Other terms that would create a contractual advantage for one party over another party.
   e. What motivates a party to buy or sell the Property.

In a limited agency situation, the parties agree that there will be no imputation of knowledge or information between any party and the limited agent or among Licensees.

Seller acknowledges that Limited Agency Authorization has been read and understood. Seller understands that Seller does not have to consent to Licensee(s) acting as limited agent(s), but gives informed consent voluntarily to limited agency and waives any claims, damages, losses, expenses, including attorneys' fees and costs, against Licensee(s) arising from Licensee's(s') role of limited agent(s).

I.   **SELLER AUTHORIZATION AND COOPERATION.** Seller agrees to provide Broker with the required information necessary for entry into a listing service, Internet or other advertising media, to include electronic media and the use of any exterior/interior photos, if applicable. Seller will cooperate with Broker by permitting the Property to be shown at reasonable times and authorizes Broker to place and remove "For Sale" and other signs on the Property.

   1. Seller authorizes Broker and cooperating brokers, buyer brokers, Broker's personal assistants, contractors, inspectors, appraisers and others reasonably necessary to market the Property to enter the Property. Seller acknowledges that a buyer may enter the Property with contractors, inspectors or appraisers without being accompanied by Broker. Buyer or Buyer's broker may take videos, photos and electronic images of the Property.
   2. Seller will provide Broker with key(s) necessary to access the Property.
   3. Seller authorizes Broker to have duplicate keys made.
   4. Seller agrees not to rent or lease the Property during the term of this Listing Contract without written notification to Broker.
   5. Seller agrees that Broker may work with buyer brokers to assist in performing Broker's duties according to the terms of this Listing Contract.
   6. Seller grants to Broker an exclusive, non-revocable, copyright license to disseminate, publish, modify and reproduce all of the content of this Listing Contract, including but not limited to, price and terms of financing on a closed sale, photographs, drawings, written descriptions, narratives, and motion pictures obtained or produced by Broker and Broker's agents pursuant to this Listing Contract to members of the Indiana Association of REALTORS®, Inc., to other brokers upon request and to a listing service, Internet or any advertising media. Seller agrees that Broker shall own all rights, title and interest, including but not limited to, any copyright in Property images taken by Broker's photographers or agents.
   7. Seller authorizes its utility companies to divulge all utility information to Broker and to provide copies of utility statements, if requested. Seller's utility companies are as follows: _____
   _____
   8. Seller authorizes its Homeowner's Association (HOA) to divulge all HOA information to Broker and to provide copies of all HOA documents if requested. HOA Management Company: _____. HOA Contact Information: _____. Seller acknowledges there are homeowner's association fees and/or assessments in the amount of $_____ per _____ which have been paid by Seller through _____
   9. Seller authorizes its lending institution to divulge all mortgage information to Broker and to provide copies of the note and mortgage, if requested. Seller's lending institution is _____
   _____and the mortgage loan number is _____. If Seller's mortgage is subject to a pre-payment penalty, Seller agrees to give timely written notice to Seller's lender that the mortgage is to be pre-paid from the sale proceeds of the Property. It is acknowledged that Seller's failure to give this notice may result in a pre-payment penalty to be paid by Seller.
   10. Seller ☐ does ☐ does not authorize Broker to disclose the existence of written offers to Buyer. If Seller has authorized disclosure of the existence of offers on the Property, Broker shall also disclose, if asked, whether offers were obtained by the listing licensee, another licensee in the listing firm or by a cooperating broker. (NOTE: Disclosure of individual and company names is not necessary.)

---

(Property Address)
**Page 3 of 5 (Listing Contract)**
COPYRIGHT IAR 2017

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                     Listing Package

187  J.  LOCKBOX/KEY AUTHORIZATION/USE. To facilitate access to the Property, a lockbox installation ☐ is ☐ is not authorized, subject
188      following acknowledgements/conditions:
189
190          1.  Seller will safeguard valuables. Seller accepts responsibility for preparing the Property to minimize the likelihood of injury,
191              damage and/or loss of personal property.
192          2.  Seller acknowledges Broker is not an insurer of Seller's real estate and personal property and waives claims against
193              Broker and Broker's authorized persons for loss and/or damage. Seller further agrees to indemnify and hold harmless Broker and
194              all authorized persons from claims by third parties from all loss and/or damage.
195          3.  Seller instructs Broker to make reasonable efforts to notify Seller of showing requests. If Seller cannot be contacted to
196              schedule a showing, Seller ☐ authorizes ☐ does not authorize Broker to access the Property,
197          4.  Where a tenant/lessee occupies the Property, it is Seller's sole responsibility to obtain tenant/lessee consent to allow the
198              use of a lockbox/key and consent for Broker to access the property.
199
200  K.  FAIR HOUSING. The parties acknowledge that the Fair Housing Act prohibits discrimination in housing because of race, color,
201      national origin, religion, sex, familial status, and handicap.
202
203      The National Association of REALTORS® Code of Ethics also prohibits REALTORS® from discriminating on the basis of sexual
204      orientation or gender identity.
205
206  L.  ADDITIONAL PROVISIONS.
207
208          1.  Seller understands the terms of this Listing Contract and has received a copy.
209          2.  The parties to this contract agree that it contains the entire agreement of the parties and cannot be changed except by
210              their written consent.
211          3.  The parties to this contract agree that it is binding upon the parties' heirs, administrators, executors, successors and assigns.
212          4.  The parties to this contract agree that this Agreement/contract together with any and all subsequent forms, amendments
213              and addenda may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all
214              of which together shall constitute one and the same instrument. The parties agree that this Agreement/contract together with any
215              and all subsequent forms, amendments and addenda may be transmitted between them electronically or digitally. The parties
216              intend that electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The
217              original documents shall be promptly delivered, if requested.
218          5.  Broker may refer Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title
219              insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker does no
220              guarantee the performance of any service provider. Seller is free to select providers other than those referred or recommended
221              to Seller by Broker.
222          6.  Broker is not and shall not be charged with the responsibility for the custody, management, care, maintenance, protection
223              or repair of the Property nor for the protection or custody of any personal property located thereon, unless provided for in another
224              written agreement.
225          7.  Seller consents to receive communications from Broker via telephone, U.S. mail, email, text message and facsimile at
226              the numbers/addresses provided to Broker unless Seller notifies Broker in writing to the contrary.
227          8.  Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.
228          9.  Seller discloses to Listing Broker that Seller is licensed and holds License # _____.
229
230  M.  WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide nonpublic personal
231      information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER OR TITLE COMPANY, do not
232      respond until you verify the authenticity by direct communication with Broker or Title Company. Such requests may be part of a
233      scheme to steal funds or use your identity to commit a crime.
234  N.  FURTHER CONDITIONS.
235      _This Listing Agreement and any sale of the property_
236      _____
237      _is subject to and conditioned upon approval by_
238      _____
239      _the United States Bankruptcy Court._
240      _____

---

(Property Address)
**Page 4 of 5 (Listing Contract)**
COPYRIGHT IAR 2017

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Listing Package

241
242  | AGENT | IN LICENSE # | SELLER'S SIGNATURE | DATE |
243
244           *Martin Seifert, as Trustee for the estate of Trevor*
245  | BROKER OR COMPANY NAME | IN LICENSE # | PRINTED | |
246           *& Melissa Walker*
247
248  | ACCEPTED BY: MANAGING BROKER | DATE | SELLER'S SIGNATURE | DATE |
249
250
251           PRINTED



Prepared and provided as member service by the Indiana Association of REALTORS®, Inc. (IAR)  This form is restricted to use by members of IAR,  This is a legally binding contract, if not understood seek legal advice.
Form #01. Copyright IAR 2017





# LIMITED AGENCY AGREEMENT

**(Licensee represents both Seller and Buyer or both Landlord and Tenant)**
**(Managing Broker personally represents a client and affiliated Licensee represents other client)**

1  This Limited Agency Agreement ("Agreement") is dated _____ , _____ .
2
3  **A. BUYER/TENANT ("Buyer"):** _____
4
5  _____ .
6
7  **B. SELLER/LANDLORD ("Seller"):** _____
8
9  _____ .
10
11  **C. SUBJECT PROPERTY ("Property"):** _____
12
13  _____ .
14
15  **D. NAME OF LIMITED AGENTS(S) ("Licensee"):** _____
16
17  _____
18
19  ("Purchase price/listed price" shall also mean "lease rate," if applicable. "Licensee" shall refer to any broker acting as agent for a
20  party. "Limited agent" means a licensee who, with the written and informed consent of all parties to a real estate transaction,
21  represents both the Seller and Buyer.)
22
23  **E. LIMITED AGENCY AUTHORIZTION:**  The Licensee is authorized by Seller and Buyer to represent
24  both of them in this transaction. Seller and Buyer understand that this limited agency relationship may create
25  certain conflicts of interest, and that Licensee is representing two parties whose interests are different or
26  even adverse.
27
28  **F. ADDITIONAL DISCLOSURES:** Seller and Buyer acknowledge that Licensee **shall not disclose** the
29  following without the informed consent, in writing, of both Seller and Buyer:
30
31      (1)    Any material or confidential information, except adverse material facts or risks actually known
32              by the Licensee concerning the physical condition of the Property and facts required by
33              statute, rule, or regulation to be disclosed and that could not be discovered by a reasonable
34              and timely inspection of the Property by the parties.
35
36      (2)    That a buyer will pay more than the offered purchase price for the Property.
37
38      (3)    That a Seller will accept less than the listed price for the Property.
39
40      (4)    What motivates a party to buy, sell or lease the Property.
41
42      (5)    Other terms that would create a contractual advantage for one (1) party over another party.
43
44  Seller and Buyer acknowledge that there will be no imputation of knowledge or information between
45  any party and the limited agent or among Licensees.
46
47  Seller and Buyer acknowledge that they do not have to consent to the limited agency in this transaction.
48
49  Seller and Buyer consent voluntarily to Licensee's limited agency capacity and waive any claims, damages,
50  losses, expenses, including attorneys' fees and costs, against Licensee arising from Licensee's role of
51  limited agent.
52
53  **G. PRIOR AGREEMENTS:** Seller and Buyer understand this Agreement does not replace prior agreements
54  with Licensee to represent Seller or Buyer. However, where this Limited Agency Agreement contradicts
55  or conflicts with prior agreements, this Limited Agency Agreement shall supersede.
56

_____
(Property Address)
**Page 1 of 2  (Limited Agency Agreement)**

COPYRIGHT IAR 2017

ABC Realty, 9170 N Raider Middletown, IN 47356                                        Phone: 765.621.7594              Fax: 765.354.9857                    Listing Package
Mary Cordle                                        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

57   H. CANCELLATION: If the Seller and Buyer do not enter into an agreement relating to the Property or if the
58   transaction fails to close, Seller and Buyer agree that this Agreement is automatically cancelled and the
59   Licensee's role of limited agent is terminated.
60
61   **By signature below, the parties verify that they understand and approve this Limited Agency**
62   **Agreement and acknowledge receipt of a signed copy. This Agreement may be executed**
63   **simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of**
64   **which together shall constitute one and the same instrument. The parties agree that this Agreement**
65   **may be transmitted between them electronically or digitally. The parties intend that electronically or digitally**
66   **transmitted signatures constitute original signatures and are binding on the parties. The original document**
67   **shall be promptly delivered, if requested.**

| | |
|---|---|
| BUYER'S SIGNATURE                    DATE | BUYER'S SIGNATURE                    DATE |
| PRINTED | PRINTED |
| SELLER'S SIGNATURE                   DATE | SELLER'S SIGNATURE                   DATE |
| PRINTED | PRINTED |



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR).  This form
is restricted to use by members of IAR.  This is a legally binding contract, if not understood seek legal advice.
**Form #40.  Copyright IAR 2017**


EQUAL HOUSING
OPPORTUNITY

(Property Address)

**Page 2 of 2  (Limited Agency Agreement)**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

IN THE MATTER OF:          )
                                      )

TREVOR JUSTIN WALKER and     )     CASE NO.  18-10633
MELISSA SUE WALKER,         )     Chapter 7
                                      )

           DEBTORS.          )

## DECLARATION OF REAL ESTATE AGENT

I, Mary Cordle, declare:

1.     That I am a real estate agent duly licensed to sell real estate in the State of Indiana.

2.     I am associated with ABC Realty and all the associates of this agency are similarly duly licensed to sell real estate in the State of Indiana.

3.     I have extensive experience in the sale of real estate and am well-qualified to serve as agent for the Trustee to sell real estate belonging to the Debtors, Trevor Justin Walker and Melissa Sue Walker, and am willing to accept employment on the basis set forth in the Trustee's Application To Employ Realtor.

4.     I do not hold any interest adverse to the above-entitled estate and am a disinterested party as defined in 11 U.S.C. §101(14).  Further, I have not been employed by the Debtors, Trevor Justin Walker and Melissa Sue Walker, any of his affiliates, or by any officer, director, shareholder, partner, or limited partner, or any scheduled creditor of the Debtors, except that I acted as listing agent on the real estate for Trevor Justin Walker and Melissa Sue Walker prior to the filing of the bankruptcy petition.

5.     I do not have any connection with the United States Trustee's office or its employees.

R:\BMSW\quikdocs\18-10633\declaration of realtor (abc realty).wpd.1

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this __31st__ day of August, 2008.

_____
Mary Cordle

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. | 18-10633 |
| | ) | CHAPTER | 7 |
| TREVOR JUSTIN WALKER | ) | REG/jd | |
| MELISSA SUE WALKER | ) | | |
| | ) | | |
| Debtors | ) | | |

## ORDER TO SERVE NOTICE

On September 06, 2018

The application to employ Realtors, filed on September 5, 2018, may be granted, without a

hearing, in the absence of any objection following twenty-one days notice to creditors.  Movant shall

be responsible for serving notice of the application to employ and the opportunity to object thereto,

in accordance with N.D. Ind. L.B.R. B-2002-2(e), upon all creditors and parties in interest and

making due proof thereof.

SO ORDERED.


/s/ Robert E. Grant
Chief Judge, United States Bankruptcy Court

```
Label Matrix for local noticing        AIR METHODS                      ALLY FINANCIAL
0755-1                                  PO BO X1280                      PO BOX 380901
Case 18-10633-reg                       Oaks, PA 19456                   Minneapolis, MN 55438-0901
Northern District of Indiana
Fort Wayne Division
Fri Sep  7 11:14:27 EDT 2018


(p)AMERICAN HONDA FINANCE                ASSOCIATED ANESTHESILOGISTS     BALL MEMORIAL HOSPITAL
P O BOX 168088                           5734 COVENTRY LANE              2401 W UNIVERSITY AVE
IRVING TX 75016-8088                     Fort Wayne, IN 46804-7141       Muncie, IN 47303-3499



(p)BANK OF AMERICA                       BARCLAYS BANK DELEWARE          BELTWAY SURGERY CENTER
PO BOX 982238                            PO BOX 8801                     151 PENNSYLVANIA PARKWAY
EL PASO TX 79998-2238                    PHILADELPHIA, PA 19201          Indianapolis, IN 46280-1379



BLUFFTON REGIONAL MEDICAL CENTER         CAPITAL ONE BANK                CAPITAL ONE/MENARDS
15679 COLLECTION CENTER DRIVE            PO BOX 30285                    PO BOX 15521
Chicago, IL 60693-0156                   Salt Lake City, UT 84130-0285   Wilmington, DE 19850-5521



CHASE                                    COMENITY BANK/GNDRMTMC          COMENITY BANK/MARATHON
PO BOX 15298                             PO BOX 182789                   PO BOX 182273
Wilmington, DE 19886-5298                Columbus, OH 43218-2789         Columbus, OH 43218-2273



DR. DANA REIHMAN                         DR. MULOKIZI K LUGAKINGIRA      EMERGENCY MEDICINE OF IN
1050 REID PKWY #130                      4011 W. JEFFERSON BLVD, STE 300 7950 W. JEFFERSON BLVD STE 2121
Richmond, IN 47374-1156                  Fort Wayne, IN 46804-6859       Fort Wayne, IN 46804-4140



FORT WAYNE ORTHOPAEDICS                  GLA COMPANY                     Nancy J. Gargula
PO BOX 208                               PO BOX 588                      100 East Wayne Street, 5th Floor
Fort Wayne, IN 46801-0208                Greensburg, IN 47240-0588       South Bend, IN 46601-2349



Steven J. Glaser                         HELVEY AND ASSOCIATES           INNOVATIVE HOSPITAL CARE
132 E. Berry St                          1015 EAST CENTER STREET         275 WEST 12TH STREET
Fort Wayne, IN 46802-2401                Warsaw, IN 46580-3420           Peru, IN 46970-1638



IU HEALTH                                Indiana Department of Revenue   JAY COUNTY EMERGENCY MEDICAL SERVICE
PO BOX 4374                              Bankruptcy Section - MS 108     901 N CREAGOR AVE
Chicago, IL 60680-4374                   100 North Senate Avenue, N240   Portland, IN 47371
                                         Indianapolis IN 46204-2231


JAY COUNTY HOSPITAL                      (p)JAY COUNTY TREASURER         KOHLS
500 WEST VOTAW                           120 NORTH COURT ST              PO BOX 3043
Portland, IN 47371-1399                  STE 203                         Milwaukee, WI 53201-3043
                                         PORTLAND IN 47371-2198
```

LAMPCO FCU
5411 MARTIN LUTHER KING JR BLVD
Anderson, IN 46013-9720

LUTHERAN HOSPITAL
7950 W JEFFERSON BLVD
Fort Wayne, IN 46804-4160

LUTHERAN MEDICAL GROUP
7836 W JEFFERSON BLVD
Fort Wayne, IN 46804-4165


MARION GENERAL HOSPITAL
441 N. WABASH AVE
Marion, IN 46952-2690

PARKVIEW HEALTH
PO BOX 10416
Des Moines, IA 50306-0416

PARKVIEW HEALTH PHYSICIANS
10501 CORPORATE DRIVE
Fort Wayne, IN 46845-1700


PAYPAL CREDIT
PO BOX 5018
Lutherville Timonium, MD 21094-5018

PENNY MAC
PO BOX 514387
Los Angeles, CA 90051-4387

PREMIER CREDIT OF NORTH AMERICA
PO BOX 19309
Indianapolis, IN 46219-0309


PROFESSIONAL ACCOUNT SERVICES
PO BOX 188
Brentwood, TN 37024-0188

PROFESSIONAL ACCOUNT SERVICES
PO BOX 68
Brentwood, TN 37024-0068

REHABILITATION HOSPITAL OF FORT WAYNE
7970 JEFFERSON BLVD
Fort Wayne, IN 46804-4140


REID PHYSICIAN ASSOCIATES
PO BOX 27793
Salt Lake City, UT 84127-0793

REID PHYSICIANS
PO BOX 27793
Salt Lake City, UT 84127-0793

ROCK MOUNTAIN HOLDINGS
OP BOX 713362
Cincinnati, OH 45271-0001


SEARS
PO BOX 6282
Sioux Falls, SD 57117-6282

SNOW & SAUERTEIG
203 E. BERRY ST. STE 1100
Fort Wayne, IN 46802-2715

ST. JOSEPH HOSPITAL
700 BROADWAY
Fort Wayne, IN 46802-1493


ST. JOSEPH MEDICAL GROUP
PO BOX 8306
Belfast, ME 04915-8300

SUMMIT RADIOLOGY
PO BOX 2603
Fort Wayne, IN 46801-2603

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021


VERIZON WIRELESS
PO BOX 25505
Lehigh Valley, PA 18002-5505

Melissa Sue Walker
773 N. 1100 W.
Dunkirk, IN 47336-9077

Trevor Justin Walker
773 N. 1100 W.
Dunkirk, IN 47336-9077


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


AMERICAN HONDA FINANCIAL
PO BOX 60001
City of Industry, CA 91716

BANK OF AMERICA
PO BOX 982238
El Paso, TX 79998

Jay County Treasurer
Courthouse
Portland IN 47371

```
End of Label Matrix
Mailable recipients    53
Bypassed recipients     0
Total                  53
```