# UNITED STATE BANKRUPTCY COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 18-10633 |
| TREVOR JUSTIN WALKER and ) | |
| MELISSA SUE WALKER, ) | |
| ) | |
| DEBTORS. ) | |

### MOTION FOR AUTHORITY TO SELL REAL ESTATE BY PRIVATE SALE, FREE AND CLEAR OF LIENS, AND TO MAKE PAYMENT OF SECURED AND ADMINISTRATIVE CLAIMS AND CLOSING COSTS

Martin E. Seifert, Trustee ("Trustee"), pursuant to 11 U.S.C. § 363, files this motion to approve sale of real estate, free and clear of all liens, encumbrances, and interests ("Motion"). As his Motion, the Trustee states as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and District Court Local Rule 200.1. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested is 11 U.S.C. §§ 363(b), (f) and (m), and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### BACKGROUND

4. On April 16, 2018, the Debtors filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

5. On April 16, 2018, Martin E. Seifert was immediately appointed as Trustee.

6.  Among the assets of the estate is a parcel of real estate commonly known as 773 N 1100 W, Dunkirk, Indiana 47336 ("Real Estate").

7.  The Trustee has received and accepted an offer to purchase the Real Estate for $68,000.00 subject to the approval of the Court. A true and accurate copy of the Purchase Agreement is attached as **Exhibit A**.

8.  PennyMac Loan Services, LLC ("Secured Creditor") has represented and warranted that it possesses a valid, perfected, enforceable and unavoidable mortgage lien on the Real Estate by virtue of a promissory note and a mortgage recorded in the Office of the Recorder of Jay County, Indiana (the "Secured Creditor Indebtedness").

## RELIEF REQUESTED

9.  The Trustee has determined that, pursuant to 11 U.S.C. §§ 704(1) and 363(b)(1), (f) and (m), it is in the best interests of the estate to sell the Real Estate by private sale, free and clear of liens. As a material inducement to the Trustee's decision to pursue the proposed sale, the Secured Creditor consents to the sale of the Real Estate and the payment of a carve-out fund of $5,000.00 (the "Carve-Out Fund") will provide a means to pay for the costs of this case and provide a source of funds for recovery by other creditors.

## BASIS FOR RELIEF

**A.  The Sale of the Real Estate Should be Approved**

10. The Trustee seeks the Court's authority to sell the Real Estate free and clear of all liens, claims, encumbrances, and interests, but otherwise "As-Is, Where-Is" and without representations or warranties of any type, express or implied, being given by the Trustee and his professionals, pursuant to the sale procedures described below.

11.     The Trustee has entered into a Purchase and Sale Agreement for the Real Estate in the amount of $68,000.00, which has been approved by the Secured Creditor and will result in a carve-out for the bankruptcy estate in the amount of $5,000.00.  A true and accurate copy of the Secured Creditors' consent is attached as **Exhibit B**.

12.     Accordingly, the Trustee submits that the sale of the Real Estate pursuant to the above process is reasonable under 11 U.S.C. § 363(b).

**B.     The Sale of the Real Estate Should be Approved Free and Clear of All Interests**

13.     The Trustee also seeks authority to pay the real estate brokers per the Court's prior order on the Application to Employ and to pay the customary costs of closing.

14.     Attached as **Exhibit C** is a proposed settlement statement showing the anticipated payments.

15.     The Trustee respectfully requests that this Court: (a) waive the 14 day stay pursuant to Rule 6004(h), deem the sale order enforceable immediately upon entry, and authorize the Trustee to close on the sale immediately upon entry of the Final Sale Order; and (b) authorize the Trustee to take all actions and execute all documents he deems reasonable, necessary and/or desirable to effectuate the requested relief.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order approving the sale of the Real Estate pursuant to 11 U.S.C. § 363, and for such other and further relief as this Court deems proper in the premises.

**Dated: July 19, 2019**

        **Respectfully submitted,**

        **CHAPTER 7 TRUSTEE**
        **444 EAST MAIN STREET**
        **FORT WAYNE, INDIANA 46802**
        **TELEPHONE: (260) 426-0444**
        **FAX: (260) 422-0274**
        **EMAIL: mseifert@hallercolvin.com**

        **BY: /s/ Martin E. Seifert**
            **MARTIN E. SEIFERT**
            **I.D. #16857-02**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the above and foregoing Motion for Authority to Sell Real Estate by Private Sale, Free and Clear of Liens, and to Make Payment of Secured and Administrative Claims and Closing Costs has been sent electronically by the Court's electronic filing service or by first class United States mail, postage prepaid, this 19th day of July, 2019, to:

| | |
|---|---|
| Steven J. Glaser, Esq. | United States Trustee |
| Glaser & Ebbs | 555 One Michiana Square |
| 132 E. Berry Street | 100 East Wayne Street |
| Fort Wayne, IN 46802 | South Bend, Indiana 46601 |

        /s/ Martin E. Seifert
        **MARTIN E. SEIFERT**

| Listing Broker (Co.) **Berkshire Hathaway Indiana Realty** | (**ME120**) Office code | By **Mary Cordle** | (**ME2180**) individual code |
|---|---|---|---|
| Selling Broker (Co.) **FC Tucker Muncie** | ( ) Office code | By **Lisa Buckner** | ( ) individual code |

**INDIANA ASSOCIATION OF REALTORS®, INC.**

# PURCHASE AGREEMENT
## (IMPROVED PROPERTY)
### For use only by members of the Indiana Association of REALTORS®

1  Date: **March 19, 2019**
2
3  A.  **BUYER:** _____ **Cory Conkle, Rebecca Conkle** _____ ("Buyer")
4       agrees to buy the following property from the owner ("Seller") for the consideration and subject to the following terms,
5       provisions, and conditions:
6
7  B.  **PROPERTY:** The property ("Property") is known as _____ **773 N 1100 W** _____
8       in _____ **Knox** _____ Township, _____ **Jay County** _____ County, _____ **Dunkirk** _____
9       Indiana, _____ **47336-9077** _____ (zip code) legally described as: **PT NW 1/4 515 T23 R 12 Total 2.603A |**
10
11      together with any existing permanent improvements and fixtures attached **(unless leased or excluded)**, including, but
12      not limited to, electrical and/or gas fixtures, heating and central air-conditioning equipment and all attachments thereto,
13      built-in kitchen equipment, sump pumps, water softener, water purifier, gas grills, fireplace inserts, gas logs and grates,
14      central vacuum equipment, window shades/blinds, curtain rods, drapery poles and fixtures, ceiling fans and light
15      fixtures, towel racks and bars, storm doors, windows, awnings, TV antennas, wall mounts, satellite dishes, storage
16      barns, all landscaping, mailbox, garage door opener(s) with control(s) AND THE FOLLOWING: **Dishwasher**
17      _____
18      _____
19      EXCLUDES THE FOLLOWING: _____
20      _____
21      **HOME HEATING FUEL:** Any remaining fuel stored in tank(s) ☐ to be included in the sale ☐ will be purchased by
22      Buyer at current market price measured within five (5) days prior to closing ☒ not applicable.
23      **The terms of this Agreement will determine what items are included/excluded, <u>not</u> the Seller's Disclosure Form,**
24      **multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller at time of**
25      **closing the transaction. Buyer should verify total square footage, land, room dimensions or community amenities**
26      **if material.**
27
28  C.  **PRICE:** Buyer will pay the total purchase price of ($ **68,000.00** ) **Sixty-Eight Thousand**
29      _____ U.S. Dollars for the Property. If Buyer obtains an appraisal of the Property, this
30      Agreement is contingent upon the Property appraising at no less than the agreed upon purchase price. If appraised
31      value is less than the agreed upon purchase price, either party may terminate this Agreement or parties may mutually
32      agree to amend the price.
33
34  D.  **EARNEST MONEY:**
35      1.  **Submission:** Buyer submits $ **1,000.00** U.S. Dollars as earnest money which shall be
36          applied to the purchase price at closing. **If not submitted with Purchase Agreement, Earnest money shall be**
37          **delivered to Escrow Agent within** _____ **3** _____ ☐ hours ☒ **days of acceptance of offer to purchase.**
38          Unless indicated otherwise in this Agreement, the listing broker shall act as Escrow Agent and shall, after acceptance
39          of the Agreement and **within two (2) banking days of receipt of the earnest money,** deposit the earnest money
40          into its escrow account and hold it until time of closing the transaction or termination of this Agreement. Earnest money
41          shall be returned promptly to Buyer in the event this offer is not accepted. If Buyer fails for any reason to timely submit
42          Earnest Money in the contracted amount, Seller may terminate this Agreement upon notice to Buyer prior to Escrow
43          Agent's receipt of the Earnest Money.
44      2.  **Disbursement:** Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the Broker,
45          then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If no
46          provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by certified
47          mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2. If neither Buyer nor Seller enters
48          into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may
49          release the Earnest Money to the party identified in the certified letter. If the Escrow Agent is the Broker, Broker
50          shall be absolved from any responsibility to make payment to Seller or Buyer unless the parties enter into a Mutual
51          Release or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2 (release of earnest money).
52          Buyer and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good
53          faith disbursement of Earnest Money in accordance with this Agreement and licensing regulations

773 N 1100 W, Dunkirk, IN 47336-9077
(Property Address)
Page 1 of 8   (Purchase Agreement)
Copyright IAR 2019

FC Tucker / Five Star Real Est, 3417 W Bethel Ave Suite E Muncie IN 47304   Phone: 7652892400   Fax:   773 N 1100 W
Lisa Buckner   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Exhibit A

3. **Legal Remedies/Default:** If this offer is accepted and Buyer fails or refuses to close the transaction, without legal cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller retains all rights to seek other legal and equitable remedies, which may include specific performance and additional monetary damages. All parties have the legal duty to use good faith and due diligence in completing the terms and conditions of this Agreement. A material failure to perform any obligation under this Agreement is a default which may subject the defaulting party to liability for damages and/or other legal remedies, which, as stated above, may include specific performance and monetary damages in addition to loss of Earnest Money.

E. **METHOD OF PAYMENT: (Check appropriate paragraph number)**
   1. ☐ **CASH:** The entire purchase price shall be paid in cash, U.S. Dollars, and no financing is required. Buyer to provide proof of funds submitted ☐ with offer ☐ within _____ days of acceptance. Buyer ☐ will ☐ will not have an appraisal.
   2. ☒ **NEW MORTGAGE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a

   ☒ Conventional  ☐ Insured Conventional  ☐ FHA  ☐ VA  ☐ Other: _____ first mortgage loan for **95.000** % of purchase price, payable in not less than **30** years, with an original rate of interest not to exceed **5.500** % per annum and not to exceed _____ points. Buyer shall pay all costs of obtaining financing, except _____.

   Any inspections and charges which are required to be made and charged to Buyer or Seller by the lender, FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or regulations and shall supersede any provisions of this Agreement.

   3. ☐ **ASSUMPTION: ( Attach Financing Addendum)**
   4. ☐ **CONDITIONAL SALES CONTRACT: (Attach Financing Addendum)**
   5. ☐ **OTHER METHOD OF PAYMENT: (Attach Financing Addendum)**

F. **TIME FOR OBTAINING FINANCING:**
   1. **Application:** Within **5** days after the acceptance of this Agreement, Buyer agrees to make written application for any financing necessary, to complete this transaction or for approval to assume the unpaid balance of the existing mortgage and to make a diligent effort to meet the lender's requirements and to obtain financing in cooperation with the Broker and Seller. **Buyer authorizes lender to order appraisal immediately.**
   2. **Approval:** No more than **45** days after acceptance of this Agreement shall be allowed for obtaining loan approval or mortgage assumption approval. If an approval is not obtained within the time specified above, this Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing.

G. **CLOSING:**
   1. **DATE:** The closing of the sale (the "Closing Date") shall be on or before **May 3, 2019**, or within _____ days after **within 45 days of short sale approval**, whichever is later or this Agreement shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest date above must be by mutual written agreement of the parties.
   2. **FEE:** The settlement or closing fee incurred in conducting the settlement charged by the closing agent or company shall be paid by ☐ **Buyer (included in allowance, if provided)** ☐ **Seller** ☒ **Shared equally.**
   3. **CONTINGENCY:** This Agreement:
      ☒ is not contingent upon the closing of another transaction;
      ☐ is contingent upon the closing of the **pending** transaction on Buyer's property located at _____ scheduled to close by _____.
      ☐ is contingent upon the acceptance of a Purchase Agreement on Buyer's property:
         ☐ Addendum to Purchase Agreement First Right Contingency. See attached Addendum.
         ☐ Addendum to Purchase Agreement Limited Purchase Contingency Right. See attached Addendum.
   4. **GOOD FUNDS:** Notwithstanding terms to the contrary, the Parties agree that as a condition to Closing, all funds delivered to the closing agent's escrow account be in such form that the closing agent shall be able to disburse in compliance with I.C. 27-07-3.7 et. seq. Therefore, all funds from a single source of $10,000, U.S. Dollars, or more shall be wired unconditionally to the closing agent's escrow account and all funds under $10,000, U.S. Dollars, from a single source shall be good funds as so defined by statute. Buyer is advised that the cost incurred to wire funds on behalf of the buyer to the closing agent's escrow account for the closing of this transaction shall become an expense to the buyer and the actual cost incurred shall appear on the closing statement.
   5. **WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER OR TITLE COMPANY,** do not respond until you verify the authenticity by direct communication with Broker or Title Company. Do not rely on telephone numbers provided in the electronic communication. Such requests may be part of a scheme to steal funds or use your identity.

H. **POSSESSION:**
1. The possession of the Property shall be delivered to Buyer [X] **at closing** [ ] **within** _____ **days beginning the day after closing by** _____ [ ] **a.m.** [ ] **p.m.** [ ] **noon or** [ ] **on or before** _____ **if closed.** For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing $ _____ U.S. Dollars per day. If Seller does not deliver possession by the date and time required in the first sentence of this paragraph, Seller shall pay Buyer $ _____ U.S. Dollars per day as **liquidated damages** until possession is delivered to Buyer; and Buyer shall have all other legal and equitable remedies available against the Seller.
2. **Maintenance of Property:** Seller shall maintain the Property in its present condition until its **possession** is delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing to determine whether Seller has complied with this paragraph. Seller shall remove all debris and personal property not included in the sale.
3. **Casualty Loss:** Risk of loss by damage or destruction to the Property prior to the closing shall be borne by Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to closing, Buyer, at Buyer's option, may either **(a) terminate this Agreement with prompt return of earnest money to buyer or (b) elect to close the transaction,** in which event Seller's right to all real property insurance proceeds resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.
4. **Utilities/Municipal Services:** Seller shall pay for all municipal services and public utility charges through the day of **possession.**

I. **SURVEY:** Buyer shall receive a **(Check one)** [ ] **SURVEYOR LOCATION REPORT,** which is a survey where corner markers are not set; [ ] **BOUNDARY SURVEY,** which is a survey where corner markers of the Property are set prior to closing; [X] **WAIVED,** no survey unless required by lender; at **(Check one)** [ ] **Buyer's expense (included in allowance, if provided)** [ ] **Seller's expense** [ ] **Shared equally.** The survey shall (1) be received prior to closing and certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all improvements and easements, and (4) show the flood zone designation of the Property. If Buyer waives the right to conduct a survey, the Seller, the Listing and Selling Brokers, and all licensees associated with Brokers are released from any and all liability relating to any issues that could have been discovered by a survey. This release shall survive the closing.

J. **FLOOD AREA/OTHER:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer [X] may [ ] may not terminate this Agreement if the Property requires flood insurance. Buyer [X] may [ ] may not terminate this Agreement if the Property is subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property.

K. **HOMEOWNER'S INSURANCE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a favorable written commitment for homeowner's insurance within **15** days after acceptance of this Agreement. Buyer should consult with one or more insurance agents regarding optional, or additional, coverage.

L. **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE:** Buyer and Seller acknowledge that Listing Broker, Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young children and/or the elderly.

Buyer is STRONGLY ADVISED to obtain inspections (see below) to fully determine the condition of the Property and its environmental status. The ONLY way to determine if Environmental Contaminants are present at the Property at harmful levels is through inspections.

**Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental Contaminants and release and hold harmless all Brokers, their companies and licensees from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This release shall survive the closing.**

M. **INSPECTIONS: (Check one)**

Buyer has been made aware that independent inspections disclosing the condition of the property may be conducted and has been afforded the opportunity to require such inspections as a condition of this Agreement.

773 N 1100 W, Dunkirk, IN 47336-9077
(Property Address)
Page 3 of 8    (Purchase Agreement)

1. ☐ **BUYER WAIVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS**
Buyer **WAIVES** inspections and relies upon the condition of the Property based upon Buyer's own examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing. Required FHA/VA or lender inspections are not included in this waiver.

2. ☒ **BUYER RESERVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS** (including Lead-Based Paint)
Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA, or Buyer's lender(s). All inspections shall be:
    a. At Buyer's expense (unless agreed otherwise by the parties or required by lender);
    b. Conducted by licensed, independent inspectors or qualified independent contractors selected by Buyer within the following time periods.

Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's inspections. Seller must make all areas of the Property available and accessible for Buyer's inspection.

**INSPECTION/RESPONSE PERIOD:**
A. **Initial Inspection Period:** Buyer shall order all independent inspections after acceptance of the Purchase Agreement. Buyer shall have ___14___ days beginning the day following the date of acceptance of the Purchase Agreement to respond to the inspection report(s) in writing to Seller (see "Buyer's Inspection Response").
B. **Scope of Inspection:** Inspections may include but are not limited to the condition of the following systems and components: heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation, basement, crawl space, well/septic, water, wood destroying insects and organisms, lead-based paint (note: intact lead-based paint that is in good condition is not necessarily a hazard), radon, mold and other biological contaminants and/or the following: _____ .
C. **Additional Inspection:** If the **INITIAL** inspection report reveals the presence of lead-based paint, radon, mold and other biological contaminants, or any other condition that requires further examination or testing, then Buyer shall notify Seller in writing and have ___7___ **additional days from the deadline listed above to order, receive and respond in writing to all inspection reports.**
D. **Inspection Response(s) Required:** If the Buyer does not comply with any Inspection/Response Period or make a written objection to any problem revealed in a report within the applicable Inspection/Response Period, the Property shall be deemed to be acceptable. If one party fails to respond or request in writing an extension of time to respond to the other party's Independent Inspection Response, then that inspection response is accepted. A timely request for extension is not an acceptance of the inspection response, whether or not granted. A reasonable time period to respond is required to prevent misuse of this acceptance provision. Factors considered in determining reasonable time periods include, but are not limited to, availability of responding party to respond, type and expense of repairs requested and need of responding party to obtain additional opinions to formulate a response.
E. **If Defect is identified:** If an Inspection Report reveals a DEFECT(S) with the Property, the Buyer must:
    1. Provide the inspection report, or relevant parts thereof, to the Seller; and
    2. Give the Seller the opportunity to remedy the defect(s).
F. **Seller Response to Inspection Defect:** If Seller is unable or unwilling to remedy the defect(s) to Buyer's reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then Buyer may terminate this Agreement or waive such defect(s) and the transaction shall proceed toward closing.
G. **DEFECT Defined:** Under Indiana law, "Defect" means a condition that would have a significant adverse effect on the value of the Property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises.
H. **Previously Disclosed Defect:** Buyer agrees that any property defect(s) previously disclosed by Seller, or routine maintenance and minor repair items mentioned in any report, shall not be a basis for termination of this agreement.
I. **Inspection Release:** Buyer releases and holds harmless all Brokers and their companies from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including but not limited to lead-based paint, radon, mold and other biological contaminants. This release shall survive the closing.

3. ☐ **PROPERTY IS SOLD "AS IS".** See Attached Addendum.

N. **LIMITED HOME WARRANTY PROGRAM:**
Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer which ☐ will ☒ will not be provided at a cost not to exceed $ _____ U.S. Dollars charged to ☐ **Buyer** ☐ **Seller and ordered by** ☐ **Buyer** ☐ **Seller.** Buyer and Seller acknowledge this LIMITED HOME WARRANTY PROGRAM may not cover any pre-existing defects in the Property nor replace the need for an independent home inspection. Broker may receive a fee from the home warranty provider and/or a member benefit. The Limited Home Warranty Program is a contract between Buyer/Seller and the Home Warranty Provider. The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with the Home Warranty Provider.

O. **DISCLOSURES: (Check one)**
  1. Buyer [X] has [ ] has not [ ] not applicable received and executed SELLER'S RESIDENTIAL REAL ESTATE SALES DISCLOSURE.
  2. Buyer [X] has [ ] has not [ ] not applicable received and executed a LEAD-BASED PAINT CERTIFICATION AND ACKNOWLEDGEMENT.

P. **TITLE APPROVAL:** Prior to closing, Buyer shall be furnished with [X] **a title insurance commitment for the most current and comprehensive ALTA Owner's Title Insurance Policy available** in the amount of the purchase price or [ ] **an abstract of title continued to date**, showing marketable title to Property in Seller's name. Seller must convey title free and clear of any encumbrances and title defects, with the exception of any mortgage assumed by Buyer and any restrictions or easements of record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's request, can provide information about availability of various additional title insurance coverages and endorsements and the associated costs.

**Owner's Title Insurance Premium** and that portion of Title Service Fees incurred to prepare the Owner's Policy (including title search and examination and commitment preparation), to be paid by [ ] **Buyer (included in allowance, if provided)** [X] **Seller** [ ] **Shared equally.**

**Lender's Title Insurance Premium** and that portion of Title Service Fees incurred to prepare the Lender's Policy (including title search and examination and commitment preparation), if applicable, to be paid by [X] **Buyer (included in allowance, if provided)** [ ] **Seller** [ ] **Shared equally** [ ] **Other** _____

The parties agree that [X] **Seller** [ ] **Buyer** will select a title insurance company to issue a title insurance policy and will order the commitment [X] **immediately** or [ ] **other: Single Source Property Solutions**

Pursuant to Federal and State Law, Seller cannot make Seller's selection of a title insurance provider a condition of this Agreement.

Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the deed and vendor's affidavit), so that marketable title can be conveyed.

Q. **TAXES: (Check appropriate paragraph number)**
  [ ] 1. Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable on _____ , _____ , and all taxes due thereafter. At or before closing, Seller shall pay all taxes for the Property payable before that date.
  [X] 2. All taxes that have accrued for any **prior calendar year** that remain unpaid shall be paid by Seller either to the County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued for the **current calendar year** shall be prorated on a calendar-year basis as of the day immediately prior to the Closing Date.

  **For purposes of paragraph 1 and 2:** For the purpose of determining the credit amount for accrued but unpaid taxes, taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified* tax rates. This shall be a final settlement.

  [ ] 3. **FOR RECENT CONSTRUCTION OR OTHER TAX SITUATIONS.** Seller will give a tax credit of $ _____ U.S. Dollars to Buyer at closing. This shall be a final settlement.

**WARNING:**
*The succeeding year tax bill for recently constructed homes or following reassessment periods may greatly exceed the last tax bill available to the closing agent.

*Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.

*Buyer may apply for current-year exemptions/credits at or after closing.

R. **PRORATIONS AND SPECIAL ASSESSMENTS:** Insurance, if assigned to Buyer, interest on any debt assumed or taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall pay any special assessments applicable to the Property for municipal improvements previously made to benefit the Property. Seller warrants that Seller has no knowledge of any planned improvements which may result in assessments and that no governmental or private agency has served notice requiring repairs, alterations or corrections of any existing conditions. Public or municipal improvements which are not completed as of the date above but which will result in a

303  lien or charge shall be paid by Buyer. Buyer will assume and pay all special assessments for municipal improvements
304  completed after the date of this Agreement.

306 S.  **TIME:** Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in writing to a different date and/or time.

310  **Note: Seller and Buyer have the right to withdraw any offer/counter offer prior to written acceptance and delivery of such offer/counter offer.**

313 T.  **HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"):** Documents for a **mandatory** membership association shall be delivered by the Seller to Buyer within _____ days after acceptance of this Agreement, but not later than 10 days prior to closing pursuant to I.C. 32-21-5-8.5. Brokers are not responsible for obtaining, verifying or interpreting this information. The parties agree that Brokers and their companies shall be released and held harmless from any and all liability arising out of or related to these documents.

319  If the Buyer does not make a written response to the documents within _____ days after receipt, the documents shall be deemed acceptable. In the event the Buyer does not accept the provisions in the documents and such provisions cannot be waived, this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly. Any approval of sale required by the Association shall be obtained by the Seller, in writing, within _____ days after Buyer's approval of the documents. Fees charged by the "Association", or its management company, for purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer and Seller. Start-up or one time reserve fees, if any, shall be paid by Buyer.

327  **Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable. Buyer shall therefore be responsible to become fully acquainted with neighborhood and other off-site conditions that could affect the Property.**

331 U.  **ATTORNEY'S FEES:** Any party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

335 V.  **ADDITIONAL PROVISIONS:**

1. Unless otherwise provided, any proration's for rent, taxes, insurance, damage deposits, association dues/assessments, or any other items shall be computed as of the day immediately prior to the Closing Date.

2. Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence insurance. Broker is not responsible for providing or verifying this information.

3. The Indiana State Police has created a registry of known meth contaminated properties which can be found at www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this information.

4. The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or verifying this information.

5. Conveyance of this Property shall be by general Warranty Deed, or by _____ subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.

6. If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act, Seller will pay applicable tax obligation.

7. Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer or the designated agent of either party.

8. This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns.

9. In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10. This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11. All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12. Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13. By signing below, the parties to this transaction acknowledge: 1) receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a listing service, Internet or other advertising media.

14. Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15. Buyer and seller consent to receive communications from Broker(s) via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16. Buyer discloses to Seller that Buyer holds Indiana Real Estate License # _____ .

17. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

W. **FURTHER CONDITIONS (List and attach any addenda):** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

X. **CONSULT YOUR ADVISORS:** Buyer and Seller acknowledge they have been advised that. prior to signing this document, they may seek the advice of an attorney for the legal or tax consequences of this document and the transaction to which it relates. In any real estate transaction, it is recommended that you consult with a professional, such as a civil engineer, environmental engineer, or other person, with experience in evaluating the condition of the Property.

Y. **ACKNOWLEDGEMENTS:** This ☐ is ☒ **is not** a limited agency transaction. Buyer and Seller acknowledge that each has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer and Seller further acknowledge that they understand and accept agency relationships involved in this transaction. By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge receipt of a signed copy.

Z. **EXPIRATION OF OFFER:** Unless accepted in writing by Seller and delivered to Buyer **by        5:00       ** ☐ A.M. ☒ P.M. ☐ Noon, on _____ **March 22, 2019** _____ , this Purchase Agreement shall be null and void and all parties shall be relieved of any and all liability or obligations.

This Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The parties agree that this Agreement, together with any and all subsequent forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original documents shall be promptly delivered, if requested.

**773 N 1100 W, Dunkirk, IN  47336-9077**
(Property Address)
Page 7 of 8    (Purchase Agreement)
COPYRIGHT IAR 2019

```
424  _____  3/19/2019    _____  3/19/2019
425  BUYER'S SIGNATURE         DATE         BUYER'S SIGNATURE         DATE
426
427  Cory Conkle                            Rebecca Conkle
428  PRINTED                                PRINTED
429
430  AA. SELLER'S RESPONSE: (Check appropriate paragraph number):
431
432  On  March 21, 2019 , at  9:00  ☒ A.M. ☐ P.M. ☐ Noon
433
434  ☒ 1. The above offer is Accepted.
435
436  ☐ 2. The above offer is Rejected.
437
438  ☐ 3. The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and the Counter
439      Offer.
440
441
442
443  ____M.S. Triske____  3/21/2019   _____
444  SELLER'S SIGNATURE         DATE        SELLER'S SIGNATURE        DATE
445
446  Martin E. Seifert, trustee
447  PRINTED                                PRINTED
     Matter of Walker, Bankruptcy
     Case No. 18-10633
     Subject to Bankruptcy Court
     Approval
```




Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR) This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
Form #02. Copyright IAR 2019

773 N 1100 W, Dunkirk, IN 47336-9077
(Property Address)
Page 8 of 8   (Purchase Agreement)
COPYRIGHT IAR 2019

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        773 N 1100 W



P.O. Box 514387
Los Angeles, CA 90051-4387

**Notice Date:** July 16, 2019

**Loan Number:** 1002821361
**Property Address:**
773 N 1100 W
DUNKIRK, IN 47336

MELISSA NEWSOME

RE: **Property Resolution- Short Sale Approval**

773 N 1100 W
DUNKIRK, IN 47336

Dear: MELISSA NEWSOME

**REGARDING YOUR LOAN**

Thank you for expressing an interest in a Short Sale of your property with PennyMac Loan Services, LLC (PennyMac). Your application is complete. The sale of the property is approved based on the requirements contained within this letter.

**WHY YOU RECEIVED THIS NOTICE**

PennyMac (the servicer) consents to this Request for Approval of a Short Sale and agrees to accept all net proceeds from the settlement as full and final satisfaction of the first mortgage indebtedness on the referenced property. This agreement is subject to the following:

- **Terms** – The sale and closing comply with all terms and conditions of the Short Sale Agreement between the Servicer and the Borrower as well as all terms and representations provided herein by the Borrower.
- **Changes** – Any change to the terms and representations contained in this Request for Approval of Short Sale must be approved by the servicer prior to closing.
- **Foreclosure sale** – The foreclosure sale will not be completed, if the short sale agreement is not expired or the agreed upon funds have been received.
- **Property Condition** – The property is being sold in "AS IS" condition. No repairs will be paid for out of the proceeds, unless specifically stated otherwise.

**Terms of Short Sale Approval**      **Loan Number 1002821361**

| | | | | |
|---|---|---|---|---|
| 1. | Contract Sales Price | $ 63,000.00 | 6. | Proceeds Received Date: August 30, 2019 |
| 2. | Less Total Allowable Closing Costs | $ 5,370.24 | 7. | Approved Buyer(s): |
| a. | Commissions | $ 3,780.00 | | Cory and Rebecca Conkle |
| b. | Settlement Escrow/Attorney Fees | $ 750.00 | | |
| c. | Seller's Title and Escrow Fees | $ 650.00 | 8. | Settlement Agent: |
| d. | Subordinate Lien Payoff | $ | | |
| e. | Transfer taxes/stamps/recording fees | $ | | |
| f. | Real Property Taxes | $ 190.24 | 9. | Settlement Agent's Address: |
| g. | HOA Payoff | $ | | |
| h. | Termite Inspection/Repair | $ | | , |
| i. | Borrower Relocation Assistance | $ | | |
| j. | Seller Closing Credit | $ 0.00 | | |
| k. | Other (see below) | $ 0.00 | | |
| 3. | **Net Proceeds to Servicer** | $ 57,629.76 | | |
| 4. | Buyer Contribution | $ | 10. | Settlement Agent's Office Phone: |
| 5. | Seller Cash Contribution | $ | 11. | Settlement Agent's Office Fax: |

Terms of Short Sale Explanation on Other Costs:

Under penalty of perjury you certify that:

**Exhibit B**

A. The sale of the property is an "arm's length" transaction, between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise;
B. There are no agreements or understandings between you and the Buyer that you will remain in the property as a tenant or later obtain title or ownership of the property;
C. Neither you nor the Buyer will receive any funds or commissions from the sale of the property; and
D. There are no agreements or offers relating to the sale or subsequent sale of the property that have not been disclosed to the Servicer.

_____            _____
MELISSA NEWSOME                Date                                                Date

**ACTION REQUIRED**

1. **Payment Instructions** – Payoff funds, a Final Settlement Statement/Closing Disclosure, the subordinate agreement (if applicable), and this signed agreement must be received by the Servicer by the Proceeds Received Date (item #6, page 1) in accordance with the attached wiring instructions
2. **Wiring Instructions** –

   | Bank Name | Bank of America |
   |---|---|
   | ABA Routing Number | 026009593 |
   | Bank Address | 100 West 33rd Street, New York, NY 10001 |
   | For Credit to | PennyMac Loan Servicing, LLC Payment Clearing Account |
   | Account Number | 12359-83182 |
   | For Benefit of | MELISSA NEWSOME |
   | For Final Credit To | 1002821361 |

3. **Proceeds** – All net proceeds must be approved by PennyMac. The Seller/Borrower will not receive any sale proceeds from this transaction. Any excess funds as a result of this sale must be sent to PennyMac Loan Services, LLC. If the net proceeds from the sale are not sufficient to pay off the total unpaid balance, the Seller/Borrower agrees that as a condition of this approval PennyMac will receive any funds held in an escrow/impound account and any refunds from pre-paid expenses that otherwise would be payable to Seller/Borrower. This includes, but is not limited to, proceeds received from any hazard insurance claims and/or any unearned premiums. These funds also must be made payable directly to PennyMac without recourse.
4. **Arm's Length Transaction** – You can't list the property with or sell it to anyone that you are related to or have a close personal or business relationship with. In legal language, it must be an "arm's length transaction." If you have a real estate license you can't earn a commission by listing your own property. You may not have any agreements to receive a portion of the commission or the sales price after closing. The purchaser may not sell the property for any sales price within 30 days after the short sale settlement date. For the period between 31 and 90 calendar days from the date of the short sale settlement date, the purchaser is prohibited from selling the property for a gross sales price greater than 120% of the short sale price. The prohibitions described above must be included in the sales contract and deed conveying the property to the purchaser. These restrictions shall run with the land and are not personal to the purchaser. You may not have any expectation that you will be able to buy your house back after the closing. Any knowing violation of the arm's length transaction prohibition may be a violation of federal law. If the above conditions are not met, PennyMac reserves the right to return the payoff funds.
5. **Closing and Receipt of Net proceeds** – The transaction must close in accordance with requirements stated in this document. The proceeds due to the servicer must be received by the servicer no later than the date stated on item #6, page one of this approval document. In the event the proceeds are not received on or before the date specified on item #6, a new approval from the servicer is required. You may accept these terms only by completing the short sale of your property and delivering the net proceeds of the sale to PennyMac by August 30, 2019 .

6.  **Final Settlement Statement/Closing Disclosure** – The Final Settlement Statement/Closing Disclosure must be approved by PennyMac before PennyMac will accept funds. The certified Final Settlement Statement/Closing Disclosure must be sent to the servicer within 2 days of the closing.
7.  **Subordinate Liens** – Prior to releasing any funds to holders of subordinate liens/mortgages, the closing agent must obtain a written commitment from the subordinate lien holder that it will release Borrower from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount. The written commitment is to be sent to the servicer prior to closing the file.

Please provide a new mailing address, if applicable, for the purpose of future correspondence related to the short sale (i.e. Year-End forms).

_____

New Mailing Address, City, State, Zip Code

### ADDITIONAL INFORMATION

- **Bankruptcy** – If you are currently in bankruptcy or you file bankruptcy prior to closing, you must obtain any required consent or approval of the Bankruptcy Court.
- **Tax Consequences** – A short payoff of the mortgage may have tax consequences. You are advised to contact a tax professional to determine the extent of tax liability, if any.
- **Credit Bureau Reporting** – We will follow standard industry practice and report to the major credit reporting agencies that your mortgage was settled for less than the full payment. We have no control over or responsibility for the impact of this report on your credit score. To learn more about the potential impact of a short sale on your credit you may want to go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.
- **Satisfaction and Release of Liability** – If all of the terms and conditions of this Agreement are met, upon sale and settlement of the property, PENNYMAC will prepare and send for recording a lien release in full satisfaction of the mortgage, foregoing all rights to personal liability or deficiency judgment. Prior to releasing any funds to holders of subordinate liens/mortgages, the closing agent must obtain a written commitment from the subordinate lien holder that it will release Borrower from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount.

### QUESTIONS? CONTACT US

If you have questions, please contact me directly between the hours of 08:00AM and 05:00PM. If you would like to escalate an issue, please contact propertyresolution@pnmac.com

Sincerely,

Angelique Cruz
PennyMac Loan Services, LLC
(866) 695-4122 ext. 5102

| Toll-free: (866) 695-4122 | Website: www.PennyMacUSA.com | Payments: | Correspondence: |
|---|---|---|---|
| M–F 6:00AM – 6:00PM PT<br>SAT 7:00 AM – 11:00AM PT<br>Toll-free Fax: (866) 577-7205 | **Secure Messaging Online:**<br>Create an account and/or log in to http://www.PennyMacUSA.com, then look for the Secured Message Center to communicate with us securely. | **Standard Address:**<br>P.O. Box 30597<br>Los Angeles, CA 90030-0597<br>**Overnight Address:**<br>PennyMac Loan Services<br>Attn: Lockbox Operations POB 30597<br>20500 Belshaw Ave.<br>Carson, CA 90746 | Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051-4387<br>(Please do not send payments) |

Page 3 of 4

## Important Legal Notices

PennyMac Loan Services, LLC ("PennyMac") is required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.

**ARKANSAS:** Licensed by the Arkansas Securities Department. Complaints regarding the servicing of your mortgage may be submitted to the Commissioner at www.securities.arkansas.gov.

**CALIFORNIA:** As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Licensed by the Department of Business Oversight under the California Residential Mortgage Lending Act.

**COLORADO:** A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE https://coag.gov/car. Our local office is located at 700 17th St, Suite 200, Denver, CO 80202, (866) 436-4766.

**HAWAII:** Licensed as a mortgage servicer by the Commissioner of the Division of Financial Institutions of the State of Hawaii. As a borrower, you have certain rights pertaining to complaint resolution, including those set out in this notice, and you have the right to submit complaints to the DFI Commissioner. A DFI complaint form and information about submitting complaints are available at http://cca.hawaii.gov/dfi/file-a-complaint/. Complaints may be mailed to Division of Financial Institutions, DCCA, P.O. Box 2054, Honolulu, HI 96805.

**MAINE:** PennyMac Loan Services, LLC operating hours are 6:00 A.M. until 6:00 P.M. Pacific Time Monday through Friday and 7:00 A.M. until 11:00 A.M. Pacific Time Saturday. You may contact our office during business hours by calling (866) 545-9070.

**MASSACHUSETTS:** NOTICE OF IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector. Mortgage Lender License # ML35953.

**MINNESOTA:** This collection agency is licensed by the Minnesota Department of Commerce. This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4).

**NEW YORK:** Under the Fair Debt Collection Practices Act debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. New York City Department of Consumer Affairs Collection Agency License 1294096-DCA, 1467388-DCA, 2038669-DCA, 2040969-DCA, 2076695-DCA, 2079363-DCA. City of Buffalo Collection Agency License 551910. PennyMac is registered with the Superintendent of the New York State Department of Financial Services (Department). You may obtain further information or file a complaint by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting www.dfs.ny.gov. Loans not available in New York.

**NORTH CAROLINA:** Licensed by the North Carolina Office of the Commissioner of Banks. Complaints regarding the servicing of your mortgage may be submitted to the Office of the Commissioner of Banks, 316 W. Edenton Street, Raleigh, NC 27603, (919) 733-3016. North Carolina Permit No. 104753, 112228, 112874, 112877.

**OREGON:** Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (866) 814-9710 or visit http://dfr.oregon.gov.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.

**TEXAS:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 N. LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**UTAH:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

*This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.*

Housing Opportunity © 2008-2019 PennyMac Loan Services, LLC, 3043 Townsgate Rd, Suite 200, Westlake Village, CA 91361, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Georgia Residential Mortgage Licensee #33027. Licensed by the N.J. Department of Banking and Insurance. Rhode Island Lender License # 20092600LL. Washington Consumer Loan License # CL-35953. For more information, please visit www.pennymacusa.com/state-licenses. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (02-2019)

# A. Settlement Statement (HUD-1)

OMB No. 2502-0265

### B. Type of Loan

| | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. |
| 4. ☐ VA | 5. ☐ Conv. Ins. | |

| 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|
| 190337180-52 | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Cory Daniel Conkle and Rebecca Ann Conkle | Martin E Seifert as Trustee for the Bankruptcy Estate of Trevor Justin Walker | |

| G. Property Location | H. Settlement Agent  866-620-7577 | |
|---|---|---|
| 773 N 1100 W Dunkirk, IN 47336 | SingleSource Property Solutions, LL SingleSource Property Solutions, LLC 1000 Noble Energy Drive Suite 300 Canonsburg, PA 15317 | **Place of Settlement**<br><br>I. Settlement Date  08/30/19<br>Disbursement Date  08/30/19 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---:|---|---:|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | 63,000.00 | 401. Contract sales price | 63,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,976.20 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes           to | | 406. City/town taxes           to | |
| 107. County taxes    08/31/19 to 12/31/19 | 190.24 | 407. County taxes    08/31/19 to 12/31/19 | 190.24 |
| 108. Assessments           to | | 408. Assessments           to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | **69,166.44** | **420. Gross Amount Due to Seller** | **63,190.24** |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 5,180.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan   First Mortgage | 58,010.24 |
| 205. | | 505. Payoff of second mortgage loan   Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes           to | | 510. City/town taxes           to | |
| 211. County taxes           to | | 511. County taxes           to | |
| 212. Assessments           to | | 512. Assessments           to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | **0.00** | **520. Total Reduction Amount Due Seller** | **63,190.24** |
| **300. Cash At Settlement from/to Borrower** | | **600. Cash At Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 69,166.44 | 601. Gross amount due to seller (line 420) | 63,190.24 |
| 302. Less amounts paid by/for borrower (line 220) | ( 0.00) | 602. Less reductions in amount due seller (line 520) | ( 63,190.24) |
| **303. Cash**  ☒ From  ☐ To Borrower | **69,166.44** | **603. Cash**  ☐ To  ☐ From Seller | **0.00** |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

POC-B, Paid out of Closing by Buyer POC-S, Paid out of Closing by Seller

Exhibit C

| L. Settlement Charges | | | |
|---|---|---|---|
| **700. Total Real Estate Broker Fees** $ | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
| Division of Commission (line 700) as follows: | | | |
| 701. $ 2,520.00          to Berkshire Hathaway | | | |
| 702. $ 1,260.00          to FC Tucker | | | |
| 703. Commission paid at Settlement | | | 3,780.00 |
| 704. | | | |
| **800. Items Payable In Connection With Loan** | | | |
| 801. Our origination charge | $          (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | $          (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE #A) | | |
| 804. Appraisal fee to | (from GFE #3) | | |
| 805. Credit Report to | (from GFE #3) | | |
| 806. Tax service to | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | |
| 901. Daily interest charges from  to  @ $/day | (from GFE #10) | | |
| 902. Mortgage insurance premium for  months to | (from GFE #3) | | |
| 903. Homeowner's insurance for  years to | (from GFE #11) | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's Insurance   months @ $   per month  $ | | | |
| 1003. Mortgage insurance   months @ $   per month  $ | | | |
| 1004. Property taxes   months @ $   per month  $ | | | |
| 1005.   months @ $   per month  $ | | | |
| 1006.   months @ $   per month  $ | | | |
| 1007.   months @ $   per month  $ | | | |
| 1008. Aggregate escrow adjustment   $ | | | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | 0.00 | |
| 1102. Settlement or closing fee to SingleSource Property Soluti... $ | | 450.00 | 750.00 |
| 1103. Owner's title insurance to SingleSource Property Solutions, LLC | (from GFE #5) | 171.20 | |
| 1104. Lender's title insurance to SingleSource Property Solutio... $ | | | |
| 1105. Lender's title policy limit   $ | | | |
| 1106. Owner's title policy limit   $63,000.00 | | | |
| 1107. Agent's portion of the total title insurance premium | $ | | |
| 1108. Underwriter's portion of the total title insurance premium | $ | | |
| 1109. Courier Fee to SingleSource Property Solutions LLC | | | |
| 1110. Search Fee to SingleSource Property Solutions LLC | | | 250.00 |
| 1111. Wire Fee to SingleSource Property Solutions LLC | | 10.00 | |
| 1112. Tief Policy Fee to SingleSource Property Solutions | | 5.00 | |
| 1113. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges | (from GFE #7) | 25.00 | |
| 1202. Deed $25.00    Mortgage $    Release $ | | | |
| 1203. Transfer taxes | (from GFE #8) | 20.00 | |
| 1204. City/county tax/stamps:    Deed $10.00    Mortgage $ | | | |
| 1205. State tax/stamps:    Deed $10.00    Mortgage $ | | | |
| 1206. | | | |
| 1207. | $ | | |
| 1208. | $ | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. Trustee Liability Insurance to Martin E. Seifert, as Truste... $ | | | |
| 1303. Record Motion to Sell Order | $ | | |
| 1304. Closing Coordination  to Ocean Title, LLC | | 295.00 | |
| 1305. Municipal Lien Search est. to SingleSource Property Solutions | | | 400.00 |
| 1306. Bankruptcy Estate Fee  to Martin E. Seifert, as Trustee for the Bankruptcy Estate of Tr | | 5,000.00 | |
| 1307. Title Exam Search to SingleSource Property Solutions | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 5,976.20 | 5,180.00 |

POC-B, Paid out of Closing by Buyer  POC-S, Paid out of Closing by Seller

**Addendum to Settlement Statement**

This page is attached to and made part of the Settlement Statement in the matter described on Page 1 of the Settlement Statement.

I have carefully reviewed this Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

| Borrower(s) | _____ 08/30/19 | Seller(s) | _____ 08/30/19 |
| | Cory Daniel Conkle | | Martin E Seifert as Trustee for the Bankruptcy Estate of Trevor Justin Walker |
| | _____ 08/30/19 | | |
| | Rebecca Ann Conkle | | |

The Settlement Statement which I have prepared is a true and accurate account of funds received and funds disbursed or to be disbursed for this transaction.

08/30/19  _____  SingleSource Property Solutions, LL, Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.
Paid outside of closing by B*borrower S*Seller K*Broker R*branch O*other